**SPECIAL INDEMNITY
FUND, Appellant,**

v.

**James BEDFORD, and Workers'
Compensation Court,
Appellees.**

**No. 77,740.**

Supreme Court of Oklahoma.

May 4, 1993.

---

**34.** For the text of 12 O.S.Supp.1987 § 1289(F), *see supra* note 2.

**35.** *Clifton, supra* note 13 at 697.

KAUGER, Justice:

Two issues are presented: 1) whether a worker who has received an out-of-state workers' compensation award for permanent disability qualifies as a previously impaired person under 85 O.S.Supp.1986 § 171;[1] and 2) whether excluding out-of-state prior adjudications is unconstitutional. We find that: 1) pursuant to 85 O.S.Supp.1986, recodified as 85 O.S.1991 § 171, a worker who has received an out-of-

state workers' compensation award for permanent disability does not qualify as a previously impaired person; and 2) excluding out-of-state workers' compensation awards in the determination of an employee's status as a previously impaired person is not unconstitutional.

## FACTS

The appellee, James Bedford (Bedford/employee), a Texas resident, was employed by CKC Well Service of Oklahoma (CKC/employer). On January 17, 1989, while working on a derrick in Oklahoma, the employee injured his lower back and groin. He filed a workers' compensation claim in Oklahoma against CKC and the appellant, Special Indemnity Fund (the Fund), CKC's insurance carrier, on February 1, 1989, seeking recovery for his January 17, 1989, injury. The employee alleged that he was physically impaired within the meaning of 85 O.S.1991 § 171. By joint petition, the employee, the employer, and the Fund, settled the claim for $6,355.80 temporary total disability and $10,500 permanent disability on February 20, 1990. The permanent disability award represented a 12% disability to the employee's body as a whole.

On June 4, 1990, the employee filed another claim against the Fund alleging a material increase in disability as a result of the cumulative effect of the January 17, 1989, injury coupled with his two earlier injuries in Texas.[2] The Fund denied that the two out-of-state injuries rendered the employee previously physically impaired under 85 O.S.1991 § 171. However, on May 24, 1991, the trial court increased the employee's award by 5%. It found that: 1) because the Texas injury claim was re-

---

1. Title 85 O.S.Supp.1986 § 171 provides:

"For the purpose of Sections 171 through 176 of this title, the term 'physically impaired person' is hereby defined to be a person who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of the sight of one eye, the loss by amputation of the whole or a part of a major member of his body, or the loss of the use or partial loss of the use of a major member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical pro-

fession, **or any disability which previously has been adjudged and determined by the Workers' Compensation Court** including all separately adjudicated injuries and adjudicated occupational diseases even though arising at the same time." (Emphasis supplied.)
The 1991 version is unchanged from the 1986 enactment.

2. On July 15, 1981, and May 4, 1987, the employee received awards of $400.00 and $4,500.00 respectively from the Texas Industrial Accident Board (Texas). Texas found no permanent disability as a result of the 1981 injury and a 5.8%

solved under a settlement procedure similar to the joint petition settlement used in Oklahoma, the employee was a previously impaired person at the time of his 1989 injury; 2) the employee was 22.8% permanently partially disabled; and 3) the cumulative effect of the two injuries created a material change in disability.

After deciding that it was bound by this Court's pronouncement in *Grammer v. State Indus. Court*, 435 P.2d 101 (Okla.1967), the Court of Appeals reversed. Because the applicable statute has been amended twice since *Grammer* was promulgated, and because there was a conflict between different divisions of the Court of Appeals,[3] we granted certiorari on January 12, 1993, to determine whether a worker who has received an out-of-state award for permanent disability qualifies as a previously impaired person under the current version, 85 O.S.1991 § 171.

## I.

**PURSUANT TO 85 O.S.SUPP.1986, RECODIFIED AS 85 O.S.1991 § 171, A WORKER WHO HAS RECEIVED AN OUT–OF–STATE WORKERS' COMPENSATION AWARD FOR PERMANENT DISABILITY DOES NOT QUALIFY AS A PREVIOUSLY PHYSICALLY IMPAIRED PERSON.**

■ The Fund argues that the trial court's decision is in direct conflict with our decision in *Grammer v. State Indus. Court*, 435 P.2d 101, 105 (Okla.1967). The employee insists that because a court-approved settlement on a joint petition is an adjudication and determination of disability within the meaning of 85 O.S.1991 § 171,[4] it is within the trial court's discretion to consider any previous out-of-state settlements which resemble Oklahoma's joint petition procedure.

We first interpreted this statute in *Grammer* in which we held that a claimant who had sustained industrial injuries in California and Oregon, and who had received workers' compensation for injuries in those states, was not physically impaired under 85 O.S.1961 § 171.[5] The *Grammer* Court found that the Legislature's use of the term State Industrial Court referred only to an Oklahoma adjudication, not to an out-of-state award, and that prior awards for industrial injuries occurring in another state did not meet the definition of a physically impaired person under the 1961 version of § 171.

However, four years after *Grammer*, the Legislature amended § 171 [6] to explicitly **include** adjudications from any state. The 1971 amendment of § 171 clearly expanded coverage to include prior adjudications of other states in determining whether a person was physically impaired as defined by § 171. Then in 1986, the Legis-

permanent partial disability as a result of the 1987 injury.

3. See, *Lee v. Special Indem. Fund*, 800 P.2d 254 (Okla.App.1990).

4. The employee relies on *Lee v. Special Indem. Fund*, id. In *Lee*, the Court of Appeals held that out-of-state industrial settlements are to be treated no differently than Oklahoma settlements in determining whether a person is a previously impaired person under 85 O.S.1991 § 171, see note 1, supra. However, *Lee* was not approved for publication by this Court; and it has no precedential value pursuant to 20 O.S. 1991 § 30.5.

5. The 1961 amendment is unchanged from the original 1943 enactment. The 1961 version of section 171 provides:
   "For the purpose of this Act, the term 'physically impaired person' is hereby defined to be a person who as a result of accident, disease,

birth, military action, or any other cause, has suffered the loss of the sight of one eye, the loss by amputation of the whole or a part of some member of his body, or the loss of the use, or partial loss of the use, of a specific member such as is obvious and apparent from observation or examination by an ordinary layman, that is, a person who is not skilled in the medical profession, or **any disability which previously has been adjudged and determined by the State Industrial Commission.**" (Emphasis supplied.)

6. Title 85 O.S.1971 § 171 provides:
   "For the purpose of Sections 171–176 of this title, the term 'physically impaired person' is hereby defined to be a person who as a result of accident, disease, birth, military action, or any other cause, has suffered the loss of the sight of one eye, the loss by amputation of the whole, or a part of some member of his body or the loss of the use, or partial loss of the

lature amended § 171 for the third time. The 1986 amendment, which is the same as the 1991 version, **removed** references to "State Industrial Court of the State of Oklahoma" and "state industrial court, board, or commission of any other state in the United States," leaving only the term "Workers' Compensation Court Section 171 remains unaltered since its 1986 amendment, and its language closely tracks that of the 1961 statute construed in *Grammer.*

■ Unless a contrary intent clearly appears, if a statute previously construed by courts of last resort is reenacted in the same, or substantially the same terms, the Legislature is presumed to have been familiar with its construction, and to have adopted such construction as an integral part of the statute.[7] The current language of § 171 is almost identical to that considered in *Grammer.* Evidently, the Legislature intended, by its deletion of the reference to out-of-state tribunals, to adopt an interpretation of § 171 consistent with the construction imposed in *Grammer.* We find that pursuant to 85 O.S.1991 § 171, a

worker who has received an out-of-state workers' compensation award for permanent disability does not qualify as a previously impaired person.

## II.

## EXCLUDING OUT–OF–STATE WORKERS' COMPENSATION AWARDS IN THE DETERMINATION OF AN EMPLOYEE'S STATUS AS A PHYSICALLY IMPAIRED PERSON IS NOT UNCONSTITUTIONAL.

■ The employee also argues that if § 171 does exclude out-of-state awards, the exclusion contravenes the equal protection[8] and full faith and credit[9] clauses of the United States Constitution, the Oklahoma Bill of Rights[10] and the Uniform Enforcement of Foreign Judgments Act 12 O.S. §§ 719 et seq.[11] The employee argues that a worker who is injured in Oklahoma or who has been previously injured on the job in another state, is denied equal protection if the worker is unable to apply for benefits from the Fund. This argument is

use, of a specific member of his body, or the loss of the use, or partial loss of the use, of a specific member, such as is obvious and apparent from observation or examination by an ordinary layman, that is a person who is not skilled in the medical profession, or any disability which previously **has been adjudged and determined by the State Industrial Court of the State of Oklahoma, or the state industrial court, board, or commission of any other state in the United States**; provided, further, that any disability previously adjudicated by any such court, board or commission, whose duty it is to adjudicate disability under Workmen's compensation claims, or any disability or combination of disabilities herein set out, or set out in Section 22 of this title under the 'other cases' provision of the Workmen's Compensation Laws of the State of Oklahoma, or any other state or federal board, agency or commission, shall be prima facie evidence that the claimant is a 'physically impaired person' to such an extent that the State Industrial Court of the State of Oklahoma shall have jurisdiction to hear and determine the nature and extent of any increase in disability by reason of the combination of such multiple disabilities." (Emphasis supplied.)

7. *Huff v. State,* 764 P.2d 183, 185 (Okla.1988); *Arkansas Louisiana Gas v. Travis,* 682 P.2d 225, 227 (Okla.1984); *Horath v. Pierce,* 506 P.2d 548,

553 (Okla.1973); *Larkin v. Hiittenmeyer,* 195 Okla. 669, 161 P.2d 749, 750–51 (1945).

8. U.S. Const. amend. 14, § 1 provides in pertinent part:

"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

9. U.S. Const. art. 4, § 1 provides in pertinent part:

"... Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State...."

10. The Okla. Const. art. 2, § 2 provides:

"All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry."

11. Title 12 O.S.1991 § 720 provides in pertinent part:

"... In this act 'foreign judgment' means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state...."

premised on the fact that the denial of the claim is based solely on the location of the prior injury.

The purpose of the Special Indemnity Fund is to encourage employment of previously impaired workers.[12] The Fund was created to remove a barrier to employment of physically impaired persons, and to relieve employers from liability for disabilities which do not result from work-related injuries.[13] In *Grammer v. State Indus. Court,* 435 P.2d 101, 106 (Okla.1967), we recognized that while the Act may help one class of persons with disabilities to gain employment and not help other persons with disabilities to become employed, it makes no distinction, arbitrary, capricious, or otherwise, between injured employees, insofar as the amount of workers' compensation that they are entitled to receive.[14]

The fourteenth amendment does not require that equal protection be measured by exact equality of classification.[15] It does require that the classification rest on real, not feigned differences.[16] A distinction must have some relevance to the purpose for which the classification is made, and the different treatments must not be completely disparately arbitrary.[17]

Unless a suspect classification or a fundamental right is infringed upon in an arbitrary manner, a rational-basis test is applied.[18] Because this case does not involve either a suspect classification or a fundamental right, the rational-basis test applies here. Under this test, a classification is constitutional if there is a legitimate state purpose which is furthered by the classification.[19]

The Legislature could rationally conclude that prior out-of-state settlements need not be included to fulfill the purpose of the statute. It could also legitimately conclude that inclusion of out-of-state settlements would result in protests that the out-of-state determinations were not similar to the procedures used in Oklahoma.[20] In order to determine the actual percentage of physical impairment, the trial court would be required to investigate whether the prior physical impairment was defined and determined in extra-territorial jurisdictions in the same manner as in Oklahoma. These contests could thwart the statutory scheme for employing disabled persons and for relieving the liability of employers. Further, the exclusion of out-of-state prior adjudications of permanent partial disabili-

12. *Special Indem. Fund v. Figgins,* 831 P.2d 1379, 1381 (Okla.1992). Before creation of the Indemnity Fund, it was extremely difficult for physically impaired persons to obtain employment. If an impaired person suffered an on-the-job injury causing additional disability because the injured employee was a physically impaired person, full responsibility for compensation fell on the employer or the insurance carrier. A strict enforcement of the full responsibility rule created a natural reluctance on the part of employers to hire or retain employees suffering from an obvious handicap.

13. *Special Indem. Fund v. Scott,* 652 P.2d 278, 280 (Okla.1982); *J.C. Penney v. Crumby,* 584 P.2d 1325, 1328–29 (Okla.1978); *Special Indem. Fund v. Wade,* 199 Okla. 547, 189 P.2d 609, 610–11 (1948).

14. Nor does Title 85 O.S.1991 § 171, see note 1, supra, violate the Okla. Const. art. 5, § 46, which prohibits the enactment of special laws.

15. *Norvell v. Illinois,* 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456, 459 (1963); *Kirk v. Board of County Comm'rs,* 595 P.2d 1334, 1336 (Okla.1979).

16. *Turley v. Flag–Redfern Oil Co.,* 782 P.2d 130, 137 (Okla.1989).

17. *Walters v. City of St. Louis,* 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660, 665 (1954); *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942); *Clegg v. Oklahoma State Elec. Bd.* 637 P.2d 103, 105 (Okla.1981); *Kirk v. Bd. of County Comm'rs,* see note 15 at 1336–37, supra.

18. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); *Reirdon v. Wilburton Bd. of Educ.,* 611 P.2d 239, 240 (Okla.1980).

19. *Oklahoma Educ. Ass'n. v. Alcoholic Beverage Laws Enforcement Comm'n,* 889 F.2d 929, 932 (10th Cir.1989); *Brown v. Lillard,* 814 P.2d 1040, 1043 (Okla.1991); *Clegg v. Oklahoma State Elect. Bd.,* see note 17 at 105, supra.

20. The Fund asserts that Oklahoma follows the Guides to the Evaluation of Permanent Impairment promulgated by the American Medical Association, whereas Texas determines disability according to the ability to perform manual labor and impairment to employment.

ty is rationally related to the primary source of the funding.[21] Exclusion of out-of-state prior adjudications of permanent partial disability does not violate the equal protection clause.

The purpose of the full faith and credit clause is to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in other states.[22] Even if the remedy is exclusive, a state is not compelled to subordinate its laws to those of another state [23] or to substitute the workers' compensation regime of another state for its own.[24]

We find that the employee is not a previously physically impaired person within the definition of 85 O.S.1991 § 171, and that this finding does not in any way contradict the orders of the settlement procedures used by Texas. (It is not argued that our interpretation of § 171 would give the Texas adjudication any *less* effect than that which it would command under Texas law.) As we recognized in *Grammer*, this was not a matter of enforcing, or refusing to enforce, a judgment or order of the court of another state. As construed here, § 171 does not affect the right, benefit, privilege, or immunities provided to the claimant in the prior Texas adjudication. When it enacted the current version of § 171, the Legislature decided that out-of-

state adjudications would have no effect in Oklahoma beyond the benefits already awarded in the out-of-state adjudications. Section 171 is not violative of the United States or Oklahoma Constitutions, nor does it conflict with the Uniform Enforcement of Foreign Judgments Act; because there is no judgment to enforce. The awards made to the claimant in Texas were satisfied in Texas.

## CONCLUSION

The Legislature's 1986 amendment of 85 O.S.Supp.1986 § 171 specifically deleted references to prior adjudications made by tribunals in other states concerning whether a person is previously physically impaired. We find that pursuant to 85 O.S. 1991 § 171, a worker who has received an out-of-state award for workers' compensation for permanent disability does not qualify as a previously impaired person.

The Legislature has a legitimate interest in excluding prior out-of-state settlements. Because the exclusion of previous out-of-state settlements is not a matter of enforcing or refusing to enforce an adjudication of another state, § 171 violates neither the Constitution of the United States nor the Constitution of the State of Oklahoma.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VA-

---

**21.** As noted in *Grammer v. State Indus. Court*, 435 P.2d 101, 106 (Okla.1967), the primary sources of funding for the Special Indemnity Fund are the injured Oklahoma employees and their employers' insurers. In the original enactment, insurers of Oklahoma employers were required to contribute 1% of the total compensation for permanent disability to the Special Indemnity Fund and to contribute another 1% which was withheld from the permanently disabled Oklahoma employee's benefits. 1943 Okla.Sess.Laws, p. 259, § 3. Through the years, these percentages have increased to the present 5%. 1955 Okla.Sess.Laws, p. 496, § 1 (increased to 2%), 1985 Okla.Sess.Laws, ch. 266, § 5 (increased to 3%), 1992 Okla.Sess.Laws, ch. 294, § 12 (increased to 5%). The insurers' contributions are considered losses in fixing workers' compensation insurance premium rates to be paid by Oklahoma employers. 85 O.S.Supp. 1992 § 173. The permanent total or permanent partial disabled Oklahoma employee's contribu-

tions simply reduce the workers' compensation benefits received for the injury. These permanently disabled employees pay the premium to assure subsequent employers that they will not incur liability for previously adjudicated permanent disability when hired.

**22.** *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501, 59 S.Ct. 629, 632, 83 L.Ed. 940, 944 (1939).

**23.** *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 279, 100 S.Ct. 2647, 2659–60, 65 L.Ed.2d 757, 771 (1980); *Williams v. State*, 325 U.S. 226, 229, 65 S.Ct. 1092, 1094, 89 L.Ed. 1577, 1581 (1945).

**24.** *Sade v. Northern Natural Gas Co.*, 458 F.2d 210, 216 (10th Cir.1972); *Sheerin v. Steele*, 240 F.2d 797, 800–02 (6th Cir.1957), *cert. denied*, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957).

CATED; WORKERS' COMPENSATION COURT REVERSED.

All Justices concur.